[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11964

_____

D.C. Docket No. 1:16-cr-20559-JAL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ZAYDAH LECHELLE BARKSDALE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 22, 2018)

Before MARCUS, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

This is a direct criminal appeal in which defendant, Zaydah Barksdale, was convicted after a jury trial of possession with intent to distribute a controlled substance, importation of the same, and conspiracy with respect to both. Defendant raises three arguments on appeal:  (1) a challenge to the sufficiency of the evidence; (2) an argument that the district court abused its discretion when it prevented defense counsel in closing from commenting on evidence which the district court erroneously believed was not in evidence; and (3) an argument that the district court admitted into evidence statements of defendant's co-conspirator, Garth Levy, in violation of defendant's rights under the Confrontation Clause. Having heard oral argument and carefully reviewed the briefs and relevant parts of the record, we address each of defendant's arguments in turn and affirm.

## I.   SUFFICIENCY OF THE EVIDENCE

On returning to the Miami airport on July 12, 2016, after a short trip to Curacao, defendant presented her luggage—a large black Pathfinder suitcase—to Customs and Border Patrol Officer J.R. Lopez for inspection.  Lopez found approximately 2.1 kilograms of cocaine concealed in a false bottom of the suitcase, worth about $200,000.  That evidence, plus Officer Lopez's testimony about defendant's suspicious appearance and answers to his questions, and the very substantial evidence of the conspiracy between defendant and Levy—discussed below—provide ample evidence to support defendant's convictions for importation

2

and possession with intent to distribute.

We also conclude that defendant's conspiracy convictions are supported by very strong evidence. The defendant's July 2016 trip to Curacao was the second time in recent months that she and Levy had taken overlapping trips from Atlanta to Curacao. In addition, on a third recent occasion, they both had booked a trip to Curacao which would have overlapped, except that Levy did not actually take the flight. This July 2016 trip was thus defendant's third trip to Curacao in about nine months despite defendant's very limited income. On this July 2016 trip, Levy was interrogated on his trip to Curacao by Customs and Border Patrol Officer Carlos Novoa in the Miami airport. Because Levy's answers to questions were vague, Novoa called for and searched the suitcase Levy had checked. Novoa testified that it was a large, black Pathfinder suitcase, to which were affixed three plastic tags as if price tags had been ripped off without removing the plastic fasteners. Novoa found this noteworthy as he had rarely seen this in his experience of searching thousands of bags. Significantly, Officer Lopez testified that the large, black Pathfinder suitcase which defendant presented to him (which had the cocaine concealed inside) also had three plastic tags indicating that the suitcase had been recently purchased; he too noted that it was unusual for a suitcase to have such plastic tags still affixed.

The large, black Pathfinder suitcase that defendant presented to Customs in

3

Miami not only had the cocaine in it, it had defendant's own clothes in it (as corroborated by a picture on defendant's cellphone showing her wearing some of the clothes found in the suitcase). Although defense counsel argued to the jury that baggage handlers in the airport must have switched bags and put defendant's clothes in a different Pathfinder suitcase with the false bottom and the cocaine, that argument was highly speculative and was clearly rejected by the jury.

Officer Novoa, when he inspected Levy before his flight down to Curacao, also found black carbon paper in Levy's carry-on duffel bag. Novoa knew that traffickers often attempt to conceal contraband with black carbon paper and therefore questioned Levy, who said he needed carbon paper to make copies of a contract, notwithstanding that Levy had earlier answered that he was going to Curacao for vacation, not business. At trial, the government offered evidence that the cocaine in defendant's suitcase was wrapped in black carbon paper.

There is additional evidence supporting the convictions: e.g., the fact that Levy and defendant live seven miles apart in Atlanta; defendant's demeanor when questioned at the time of arrest; her statement that while in Curacao she had met three locals, one of whom was named Levy; and Levy's pattern on his several trips to Curacao, which was to fly to Curacao with a checked suitcase but fly back without checking a suitcase. The foregoing suffices to establish that the evidence of defendant's guilt was more than sufficient; there was very strong evidence of

4

defendant's guilt.

## II.  THE DISTRICT COURT'S RESTRICTION OF DEFENSE COUNSEL'S CLOSING ARGUMENT TO THE JURY

The closing argument at issue, the government's objection, and the district

court's ruling are set forth as follows:

> [MR. SCHWARTZ:] I submit to you, ladies and gentlemen, that in the rush to get things done, my client's advice of rights form was not submitted at that time before he did his interview.  It was submitted at 10:00 p.m., after the fact.

> And you heard, ladies and gentlemen, that there was—my client said something while she was being processed.  She said, "The guy with the tattoos"—Special Agent Cruz—"he told me, if I signed the form, they would let me go."

> MS. McNAMARA: Objection, your Honor.  That's facts not in evidence.

> MR. SCHWARTZ: Your Honor, it came in.

> THE COURT: No.

> MR. SCHWARTZ: If you recall—

> THE COURT: Sustained.  Sustain the objection.  Sustain the objection.

> MR. SCHWARTZ: Ladies and gentlemen, you heard—

> THE COURT: Please disregard that statement.

> MR. SCHWARTZ: Ladies and gentlemen, you heard the testimony and my question on cross-examination of Special Agent Sauer.  What is in evidence you can consider.

> And I submit, ladies and gentlemen, something is not right here.  And

5

I'll tell you why.

All these little things, these little inconsistencies, these [sic] little cutting of corners, are important because you heard and I'm sure you're going to hear again that my client said the name Levy as one of the people she met in Curacao and spelled it out.

Well, first of all, it's not really consistent with what they claim—if everything that the Government claims is true, the handler was supposed to train her to deny, deny, deny, not spell the name of her alleged co-conspirator. It doesn't make any sense.

And, quite frankly, there's no record in his report that she—he asked her to spell it out. We got that in cross-examination.

And I submit to you, ladies and gentlemen, that she never said "Levy." Look at Exhibit 6-F-5. It's a slip of paper with a phone number on it. That ain't "Levy." That's "Leroy." That's the name she gave.

Doc. 186 at 41–42.

The district court was in error when it instructed the jury to disregard counsel's comment on the statement defendant made to Agent Sauer about Agent Cruz – "he told me, if I signed the form, they would let me go." The district court erroneously believed it had excluded that testimony when Agent Sauer was testifying.[1] However, that error is clearly harmless, because whether or not defendant said that to Agent Sauer has little or no relevance to any issue in the

---

[1]    The government's objection – "facts not in evidence" – was an appropriate objection in that the testimony that was actually before the jury did not include the fact that Agent Cruz was "the guy with the tattoos." However, the district court believed that it was excluding defendant's statement to Agent Sauer about Agent Cruz – "he told me, if I signed the form, they would let me go." And the jury might also have believed that.

6

case.

Defendant argues on appeal that the district court not only struck counsel's comment on the foregoing near irrelevant statement of defendant to Agent Sauer, but also struck counsel's argument that Agent Sauer had perjured himself and that, contrary to his testimony, he had not advised defendant of her Miranda rights until after her interview, at 10:00 p.m. that evening when the consent to search form was signed. We reject this argument. The court's ruling most plausibly addresses only the sentence immediately preceding the government's objection and certainly not counsel's comments (which appeared in preceding paragraphs) about whether defendant signed the Miranda form before the questioning started (as Agent Sauer testified) or only later. Defense counsel himself clearly did not understand the district court's ruling to limit his argument challenging the credibility of Agent Sauer, as he immediately continued his vigorous argument challenging Sauer's credibility and the credibility of the government's investigation of the crime.

### III. CONFRONTATION CLAUSE ISSUE

The district court allowed the admission into evidence of several statements made by Levy to Officer Novoa when Novoa questioned Levy at the Miami airport before Levy boarded the flight to Curacao. With respect to his interaction with Levy, Novoa testified that, when asked the purpose of his trip, Levy was very vague – e.g., "just to visit," "vacation." Doc. 183 at 18. When asked what kind of

activities, he couldn't come up with an answer. When asked if he was going to visit someone there, he answered, "Yeah. Yeah. I have a friend there." Doc. 183 at 19. When Novoa asked the friend's name, Levy came up with a name, but when asked the person's last name, Levy thought about it a while but couldn't come up with the person's last name. Novoa testified: "[B]ased on my experience, on my training, if somebody's taking that long to give you an answer or if they're—they don't know details, like a person's name, it usually means they're being deceptive." Doc. 183 at 19. Because Levy's answers raised his suspicions, Novoa called for the airline to produce the suitcase that Levy had checked, and Novoa took a picture of it. Levy also acknowledged ownership of the black carbon paper Novoa had found in his carry-on duffel bag, and acknowledged he was carrying $2000 cash.

We assume, arguendo—but expressly do not decide—that Novoa's questioning of Levy had proceeded beyond mere random questioning and that Levy's statements were testimonial. However, based on our careful review of the entire context of Novoa's testimony, as well as the government's use thereof in its arguments to the jury, we conclude that the government offered the statements of Levy—not to prove the truth thereof—but, just the opposite, to demonstrate that Levy was not telling the truth, but rather was being deceptive. It is absolutely clear that the government was suggesting to the jury—not the truth of Levy's statements

8

that he was on vacation and not the truth of his statement that he had a friend in Curacao—but rather that he was going to Curacao as part of a scheme to import cocaine. Indeed, with respect to the only[2] statement by Levy that could have added probative value to the government's case (if the jury misconstrued Levy's statement "I have a friend there" to mean not a friend who lived in Curacao but rather a co-conspirator and visitor like Barksdale who was already there), Novoa's testimony clearly revealed that the government's purpose in introducing the testimony was to show—not that Levy was flying to Curacao to vacation with a friend living there—but, quite the opposite, to demonstrate that Levy was being deceptive. As Novoa explained:

> [B]ased on my experience, on my training, if somebody's taking that long to give you an answer or if they're—they don't know details, like a person's name, it usually means they're being deceptive.

Doc. 183 at 19.

The case law is clear that "[t]he [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford v. Washington, 541 U.S. 36, 59 n.9, 124 S. Ct. 1354, 1369 n.9, 158 L. Ed. 2d 177 (2004); accord United States v. Jiminez, 564 F.3d 1280, 1286–89 (11th Cir. 2009). Because the challenged statements of Levy were

_____

[2] Other statements, like acknowledging ownership of the Pathfinder suitcase and carbon paper, have little relevance because Levy checked the suitcase, and Officer Novoa found the carbon paper.

9

not presented to the jury to prove the truth of the matters being asserted by Levy, there is no violation of the Confrontation Clause.[3]

For the foregoing reasons,[4] we affirm defendant Barksdale's convictions.[5]

AFFIRMED.

---

[3]    Moreover, if there were error, it would clearly be harmless beyond a reasonable doubt.

[4]    Other arguments of defendant on appeal are rejected without need for discussion.

[5]    Defendant Barksdale has not challenged her sentence—imprisonment for a concurrent term of 36 months followed by three years of supervised release.